REX v. CONEY ISLAND & B. R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   October 20, 1911.)

NEW TRIAL (§ 39*)—INSTRUCTIONS—INFLAMMATORY STATEMENTS.

Where the charge of the trial justice was very inflammatory and hostile to the appellant, and obviously prejudicial and unfair, a new trial in the interests of justice will be granted.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 39.*]

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Herbert Rex, an infant, by Charles M. Rex, his guardian ad litem, against the Coney Island & Brooklyn Railroad Company and the Long Island Railroad Company. From a judgment for plaintiff, and from an order denying the motion for a new trial of defendant Long Island Railroad Company on the minutes, it appeals. Reversed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

William C. Beecher, for appellant.
William D. Leonard, for respondent.

PER CURIAM. The plaintiff has recovered a judgment against the Coney Island & Brooklyn Railroad Company and the appellant, the Long Island Railroad Company, for injuries sustained in August, 1907, at a point in the borough of Brooklyn where the tracks of the two companies cross at right angles, a place known as "Manhattan Crossing." The plaintiff was a passenger on one of the trolley cars of the Coney Island & Brooklyn Railroad, and the tracks of the Long Island Railroad were used at the time by a dirt train engaged in carrying gravel and dirt for certain improvements then in progress. The train was backing at the time, and collided with the trolley car at the crossing.

The charge of the learned trial justice was very inflammatory and hostile to the appellant, and so obviously prejudicial and unfair as to require a new trial in the interests of justice. The following may be instanced as indicative:

"But the real, the serious, question as to the conduct of the Long Island Railroad Company is whether they were lacking in approaching the crossing, in approaching the point of collision *with that stealthy tread* which—perhaps, I should not say that—but in approaching in the way they did approach the crossing. * * * If the engine had been on the other end, if it had been pulling the train instead of backing it, if something at the front end were making a noise, a compelling noise, which an approaching engine makes, do you believe that the motorman would have taken that trolley car across the track? Do you believe that the conductor of that car would ever have lacked such appreciation of the danger of the situation as would have led him to the incautious beckoning to his motorman to come forward? If that train had been making a noise, a compelling noise, on the forward end, do you believe that either of the men in charge of that trolley would have taken the chances of trying to go across? Now, that is where, if anywhere, the serious question of negligence on the part of the Long Island Railroad

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company lies. They are running a train tail end first, and the only living thing that is within 450 feet of the front of it is one man standing on top of the dirt with which the car is loaded, making no noise, making no signals, for all that the evidence shows *as idle as the dirt he stood on*, as far as any warning is concerned to anybody undertaking to cross his path. * * * The question is not a question of right of way at all, not a question of whether they should have kept back, not a question of right of way, but whether they came with *such sound of trumpets as was necessary* to prevent other people using the crossing from being lulled into a false belief of security. * * * The idea that a railroad, because it has the right of way, *can crush people to death absolutely*, is a proposition too monstrous to be broached. * * * The negligence in this case is not in failing to keep back on the part of the Long Island Railroad Company, if it exists. The negligence is in failing to approach the crossing, as I said before, *with a flourish of trumpets* which would have given notice that they were there, and which nobody could have failed to understand and know."

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except WOODWARD, J., who dissents.